UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

AARON C. REED, an individual,

    Plaintiff,

v.

EZELLE INVESTMENT PROPERTIES INC.,
doing business as ezelleinvestmentproperties.com,
GLENN D. EZELLE JR., an individual, DOES 1-
10 INCLUSIVE,

    Defendants.

Case No. 3:17-cv-01364-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Aaron C. Reed ("Reed") has brought this action for copyright infringement against defendants Glenn D. Ezelle Jr. ("Ezelle") and Ezelle Investment Properties Inc. ("EIP") (collectively "defendants").[1]  Before the court are cross-motions for summary judgment.  For the reasons set forth below, Reed's motion is granted and defendants' motion is denied.

---

[1] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).  ECF #21.

1 – OPINION AND ORDER

**BACKGROUND**

Reed is a professional photographer specializing in the production of fine-art nature photography. Decl. Aaron C. Reed ¶ 2 ("Reed Decl."), ECF #26-1. Reed offers his works through his website in the form of museum quality fine-art prints. *Id.* ¶ 3. He sets strict production limits of between 50 and 200 prints for each work. *Id.* ¶ 4. His pieces sell for thousands of dollars each. *Id.*, Ex. A (displaying invoices of $12,000 for four pieces, $4,250 for two pieces, $4,800 for one piece, and $5,000 for one piece). His customers pay a premium due to the artificial scarcity of each piece. *Id.* ¶¶ 4-5. Reed has expended great time and effort establishing his brand as a fine-art nature photographer and is very selective about when and how his works are used. *Id.* ¶ 18. While Reed endeavors to protect his intellectual-property rights to the best of his ability, he does not have the time or financial resources to stop the widespread copyright infringement of his photographs. *Id.* ¶¶ 7-8.

In 2010, Reed took a photograph at the Japanese Garden in Portland, Oregon ("the Image"), and displayed it on his website. Joint Stip. Undis. Facts ¶ 1, ECF #22; *id.*, Ex. A (showing a copy of the Image). Reed registered the Image as part of a group registration of photographs taken in 2010 and did not assert a claim in the selection, coordination, or arrangement of the works included within the group. *Id.* ¶ 4. On January 30, 2013, the Copyright Office issued registration certificate number VAu 1-119-527 for the group of photographs. *Id.* ¶ 3.

Ezelle is a real estate broker licensed in Oregon and California and operates a real estate business. Decl. Glenn D. Ezelle Jr. ¶ 1 ("Ezelle Decl."), ECF #24-2. He is the sole owner and president of EIP. Joint Stip. Undis. Facts ¶ 7, ECF #22. In 2016, Ezelle searched Google for "free images" to display on EIP's website and found the Image. Ezelle Decl. ¶ 2, ECF #24-2. It

is unclear where Ezelle procured the Image. Decl. Ryan E. Carreon ¶ 4, Ex. B, ECF #35-1. Regardless, Ezelle maintains that he did not see a watermark or any other information suggesting the Image was copyrighted, and he believed he could use the Image for free. Ezelle Decl. ¶ 2, ECF #24-2. On September 7, 2016, Ezelle uploaded a copy of the Image to EIP's website where it was displayed in rotation with seven other photographs in five-second intervals at the top of the website's homepage. Joint Stip. Undis. Facts ¶¶ 9-10, ECF #22; *id.*, Ex. C (showing screenshot of EIP website with the Image). The parties dispute the amount of website traffic the EIP website received during the relevant period.[2]

In 2017, Reed discovered the Image on EIP's website and instructed his attorneys to contact Ezelle to try to resolve the matter. Reed Decl. ¶¶ 14, 19, ECF #26-1. In July 2017, through his attorneys, Reed sent Ezelle a cease-and-desist letter. Ezelle Decl., Ex. A, ECF #24-3. The communication included a Rapid Conditional Release License Agreement ("Proposed Settlement Agreement"), which provided Ezelle the option of immediately settling the matter for $5,000. *Id.* The Proposed Settlement Agreement contained the following confidentiality clause:

> The terms of this Agreement are confidential; provided however, that each Party may disclose the terms of this Agreement, as necessary to enforce its terms, in response to valid legal process or as otherwise required by law, and/or to its financial advisors and/or legal advisors.

---

[2] There is some evidence the EIP website received 3,851 visitors during this time. Ezelle Decl., Ex. B, ECF #24-3. Ezelle contends that this number is inflated and that his maintenance of the website generated much of this traffic. *See id.* ¶ 3; Suppl. Decl. Glenn D. Ezelle Jr. ¶¶ 2-3 ("Suppl. Ezelle Decl."), ECF #34. However, this disputed fact is not material because Reed seeks statutory damages in lieu of actual damages. *See* 17 USC § 504(c)(1)-(2); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1194 (9th Cir. 2001).

Proposed Settlement Agreement ¶ 7, ECF #24-3. It also provided that the "Agreement may not be modified or amended except by written agreement, signed by all Parties," and contained a severability clause. *Id.* ¶¶ 9, 11.

Upon receipt of the letter, Ezelle immediately removed the Image from EIP's website and retained counsel. Ezelle Decl., Ex. D at 31, ECF #24-6. Several days later, Ezelle's counsel sent Reed's counsel an email, sparking negotiations via email that lasted a little under a month. *Id.* In two emails sent in late July 2017, Ezelle's counsel stated his belief that Reed had seeded the internet with his photographs with the intent of later bringing dubious legal claims. Higbee Decl. ¶¶ 12-14 & Ex. B, ECF #26-1. Ezelle's counsel also stated that he was writing an article about these practices for publication in a legal magazine, and made several disparaging comments on online forums. *Id.* ¶¶ 9-10 & Ex. B, E. Nevertheless, to quickly resolve the matter without the expense of litigation, the parties made several attempts to settle the dispute. Reed Decl. ¶ 20, ECF #26-1; Ezelle Decl. ¶¶ 8-9, ECF #24-2.

On August 11, 2017, Ezelle's counsel sent an email to Reed's counsel stating that "[a]t this juncture, we intend to do as previously mentioned, but in the amount of $1000. *We are not making a settlement offer in this amount*, although you are welcome to accept it. We are going to send a check, payable to Mr. Reed in the amount of $1000." Ezelle Decl., Ex. D at 7, ECF #24-6 (emphasis added). Reed's counsel responded, "I have conveyed the $1000 offer to my client which he accepted. Please see attached the release agreement for your review. Please sign it and return it . . . ." *Id.* Ezelle returned the Proposed Settlement Agreement, but with lines drawn through the agreement's confidentiality clause. Ezelle Decl., Ex. C, ECF #24-5; *id.*, Ex. D at 6-8, ECF #24-6. In response to inquiries from Reed's counsel regarding the modification of the agreement, Ezelle's counsel's said, "If the deletions are unacceptable, you can return the check

to me." Ezelle Decl., Ex. D at 7, ECF #24-6. Through counsel, Reed responded that the confidentiality clause was non-negotiable and demanded $20,000 to settle the case. Reed Decl. ¶ 28, ECF #26-1; Ezelle Decl., Ex. D at 4, ECF #24-6. In a later email, Ezelle's counsel stated that "[t]he only thing we did not agree on was the confidentiality clause demanded by your office." Ezelle Decl., Ex. D at 2, ECF #24-6.

After negotiations fell through, Ezelle's counsel made what Reed considered additional disparaging comments on online forums characterizing Reed's efforts as "an 'extrajudicial business model' driven by dishonest representation[s] . . . ." Higbee Decl., Ex. E, ECF #26-1; Reed Decl. ¶ 24, ECF #26-1. Reed considered the confidentiality clause to be non-negotiable, because he might otherwise suffer reputational harm from Ezelle's counsel's disparaging comments about his attempts to protect his intellectual property. Higbee Decl. ¶ 11 & Ex. D, ECF #26-1; Reed Decl. ¶¶ 23, 26, ECF #26-1; Decl. Naomi M. Sarega ¶ 7, ECF #26-1. Indeed, "Reed felt that he would not be able to fully combat any negative statements made by Defendants' counsel . . . without procuring a favorable judgment on the merits . . . ." Higbee Decl. ¶ 14, ECF #26-1; *see also* Reed Decl. ¶ 24, ECF #26-1. Reed then filed suit.

**STANDARDS**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## DISCUSSION

Reed seeks a ruling that defendants infringed his copyright of the Image and an award of $15,375 in statutory damages, $9,825 in attorneys' fees, and $400 in costs. Pl.'s Mot. Summ. J. 6, ECF #26. Defendants contend that the parties entered into an enforceable settlement agreement, and alternatively argue that if such an agreement did not exist, they are innocent and not willful copyright infringers. Defs.' Mot. Summ. J. 3, ECF #24.

### I. Enforceability of Proposed Settlement Agreement

This court first considers defendants' contention that the parties entered into an enforceable settlement agreement.

#### A. Mirror Image Rule

Under Oregon law, whether a contract exists is a question of law. *Wieck v. Hostetter*, 274 Or. App. 457, 471 (2015). A "contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Moro v. State of Oregon*, 357 Or. 167, 196 (2015). "Oregon applies an objective theory of contracts." *Wieck*, 274 Or. App. at 471. That is, the existence and terms of a contract are determined by the evidence of the parties' communications and acts, not their subjective understandings. *Rhoades v. Beck*, 260 Or. App. 569, 572 (2014).

Oregon follows the mirror image rule of offer and acceptance. *Arboireau v. Adidas-Salomon AG*, 347 F.3d 1158, 1163 (9th Cir. 2003). "In Oregon, it is settled that the acceptance of an offer must correspond to the offer at every point, leaving nothing open for future negotiations." *Id*. (internal quotation and alterations omitted). "The acceptance must be positive, unconditional, unequivocal, and unambiguous, and must not change, add to, or qualify the terms of the offer." *C. R. Shaw Wholesale Co. v. Hackbarth*, 102 Or. 80, 94 (1921). "Where the offeree . . . makes a counter offer or conditional acceptance which amounts to a counter offer, or makes an attempted acceptance which seeks to modify one or more of the terms of the offer, this operates as a rejection of the original offer." *Id.* at 95-96. Before the counteroffer can become a contract, it must be accepted by the party who made the original offer. *Id.* at 96; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 59 ("a reply to an offer which purports to accept but is . . . different from those offered is not an acceptance but is a counteroffer").

Here, there is no binding settlement agreement because Ezelle's purported acceptance modified a material term of the agreement and thus constituted a counteroffer. Reed's first email to Ezelle included a copy of the Proposed Settlement Agreement, which contained the confidentiality clause at issue. Ezelle Decl., Ex. A., ECF #24-3. The parties negotiated the settlement amount for the next several weeks. *Id.*, Ex. D at 8-32, ECF #24-6. Ezelle proposed a settlement amount of $1,000, and Reed sent Ezelle another copy of the Proposed Settlement Agreement to be signed and returned with payment. Ezelle Decl., Ex. D at 7, ECF #24-6. Ezelle mailed a $1,000 check to Reed with a signed copy of the Proposed Settlement Agreement, but with the confidentiality provision crossed out. *Id.*, Ex. C, ECF #24-5; *id.*, Ex. D at 8, ECF #24-6. After that, Reed's counsel advised Ezelle's counsel that it was "a shame" they could not come to an agreement and said they were filing a complaint. *Id.*, Ex. D at 3, ECF #24-6.

Under the mirror image rule, Ezelle's tender, which included the deletion of the confidentiality clause, constituted as a rejection of Reed's offer and a counteroffer that Reed was then free to accept or reject. Given Reed did not accept this counteroffer, the parties did not enter into a binding settlement agreement as a matter of law.

Statements by Ezelle's attorney, before and after the making the counteroffer, support this conclusion. In his August 11, 2017 email, Ezelle's attorney stated "[w]e are not making a settlement offer," and after Reed's counsel rejected the counteroffer, Ezelle's attorney stated that "[i]f the deletions are unacceptable, you can return the check to me." *Id.*, Ex. D at 6, 8, ECF #24-6. Moreover, the Proposed Settlement Agreement specifically states that the "Agreement may not be modified or amended except by written agreement, signed by all Parties." Proposed Settlement Agreement ¶ 9, ECF #24-3. Reed did not agree to Ezelle's modification with a signed writing.

Ezelle cites *Remark LLC v. Adell Broad.*, 817 F. Supp. 2d 990, 995 (E.D. Mich. 2011), *aff'd sub nom. Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280 (6th Cir. 2012), in support of his argument. Defs.' Mot. Summ. J. 9, ECF #24. However, *Remark* is easily distinguishable because there the plaintiff actually accepted the defendant's counteroffer before it retained new counsel and contested a term of the settlement agreement. 817 F. Supp. 2d at 994-95. Here, Reed did not accept the counteroffer before contesting a term of the settlement agreement. Instead, upon receiving the counteroffer, he informed Ezelle that the confidentiality clause was non-negotiable. Reed Decl. ¶ 28, ECF #26-1; Ezelle Decl., Ex. D at 4, ECF #24-6.

B.   **Materiality, Unconscionability, and Severability**

Ezelle argues that his deletion of the confidentiality clause was immaterial because it was not a material term of the agreement. He also contends that enforcement of such a provision is

unconscionable because it violates public policy, and that a binding agreement exists even if the confidentiality clause was material. Defs.' Mot. Summ. J. 4, 8-11, ECF #24. These arguments lack merit for the reasons discussed below.

### 1. Materiality

"A term is 'material' to an enforceable agreement when it goes to the substance of the contract and, if breached, defeats the object of the parties in entering into the agreement." *Johnstone v. Zimmer*, 191 Or. App. 26, 34 (2003). A term may be material in one situation and immaterial in another, depending on the specific facts and circumstances. In *Gabaldon v. City of Peoria*, for example, the court found that a confidentiality clause in a release agreement was a material term because "the parties were still clearly engaged in negotiating the terms of the agreement" and "[t]he parties had merely agreed on a dollar amount and not on the rest of the terms." No. CV12-01612-PHX-JAT, 2013 WL 5428755, at *3 (D. Ariz. Sept. 27, 2013). Importantly, the *Gabaldon* court considered the specific circumstances surrounding the negotiation process and found that they were determinative.

As such, Ezelle's reliance on *Dyer v. Bilaall*, 983 A.2d 349 (D.C. 2009), for the proposition that all confidentiality clauses are immaterial is misplaced. In *Dyer*, several homeowners sued the defendants alleging they had engaged in a mortgage foreclosure rescue scam. *Id.* at 353. The day before trial, one of the defendants offered to "completely" settle the case with one of the plaintiffs. *Id.* at 355. The next day, that defendant's attorney announced in open court that his client had reached a settlement with the plaintiff and read the "material terms" into the record, to which there was no objection. *Id.* at 356. There was no mention of a confidentiality clause. *Id.* at 358. When the parties attempted to put their agreement in writing, they reached an impasse regarding whether a confidentiality clause should be included. The

plaintiff filed a motion to enforce the settlement agreement, arguing that the parties had no contract because the agreement omitted the material term of a confidentiality clause. The court opined that "[a] case clearly may be settled without a confidentiality clause. Such a provision certainly *could* have been deemed material, but neither party referred to confidentiality in the e-mail, in the acceptance, or in open court." *Id.* (emphasis in original). The court further noted that "[i]f confidentiality were, indeed, an indispensable part of the settlement, it is curious that [the plaintiff's counsel] stood by silently while the material terms were stated by his opponent on the record, in open court." *Id.* The court thus concluded that the agreement was valid, even though it did not contain a confidentiality clause. *Id.*

*Dyer* is factually distinguishable because the plaintiff did not raise the issue of a confidentiality clause until after there was an offer and acceptance. Here, the facts show that the confidentiality clause was always an essential part of the deal that Reed wanted to make. Every proposed agreement that Reed sent to Ezelle contained a confidentiality clause. Reed insisted on confidentiality because Ezelle's counsel began making disparaging comments that he was somehow engaging in fraudulent and unethical behavior for attempting to protect his intellectual property. Reed Decl. ¶¶ 24-30, ECF #26-1; Higbee Decl. ¶¶ 12-14, ECF #26-1. Moreover, unlike *Dyer*, Ezelle did not accept Reed's offer, but instead rejected it and made a counteroffer by returning the Proposed Settlement Agreement with the confidentiality clause crossed out.

Defendants argue that "if the confidentiality clause was truly a material term then plaintiff would have filed suit when defendants' counsel made them aware that aspects of the settlement discussion had already been publicized."[3] Defs.' Mot. Summ. J. 9, ECF #24. Indeed,

---

[3] *See* Ezelle Decl. ¶¶ 9-10, Ex. B, E (referring to the disparaging comments Ezelle's counsel apparently made on several online forums).

10 – OPINION AND ORDER

Reed could have filed suit then, but it was not unreasonable for him to attempt to settle the matter with a confidentiality clause, as he did. Reed cannot be faulted for making every effort to resolve the matter before filing suit.

### 2. Unconscionability

Ezelle contends that the confidentiality clause is unconscionable because Reed has an "overwhelmingly one-sided advantage through maintaining a settlement-based business model." Defs.' Mot. Summ. J. 10, ECF #24. However, Ezelle provides no evidence for this assertion. Courts regularly enforce confidentiality clauses in settlement agreements, and "there is no reason to think that it represent[ed] any overreaching" here. *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1139 (9th Cir. 2002). Reed is not a "copyright troll" who is "more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service." *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015). He is a practicing entity who maintains his livelihood by creating and selling fine-art nature photography. *See* Reed Decl., Ex. A, ECF #26-1; *see also Malibu Media*, 2015 WL 4092417, at *2-3 (discussing copyright trolls and their questionable use of court procedure).

Ezelle cites the dissenting opinion in *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1061 (9th Cir. 2013) (Pregerson, dissenting), and argues: "*Kilgore* held that a confidentiality clause was unconscionable and thus unenforceable because the party seeking to enforce the clause was a repeat player in the settlement process, knows the outcome of each settlement, and can use that knowledge to its advantage." Defs.' Mot. Summ. J 10, ECF #24. Ezelle mistakes the dissenting opinion for binding authority. Moreover, the majority opinion in *Kilgore* held the opposite. In *Kilgore*, the plaintiffs were former students who sought broad injunctive relief

against the bank that originated their student loans. 718 F.3d at 1055. To secure their student loans, the plaintiffs executed promissory notes containing an arbitration clause, which contained a confidentiality clause. *Id.* at 1056. The plaintiffs sought to invalidate the arbitration and confidentiality clauses. The majority enforced the clauses, holding they were neither substantively nor procedurally unconscionable. *Id.* at 1061 (remanding with instructions to compel arbitration).

Ezelle next relies on *Ingenuity 13, LLC v. Doe*, a case involving a notorious "porno-trolling collective." No. 2:12–cv–8333–ODW (JCx), 2013 WL 1898633 at *1 (C.D. Cal. May 6, 2013). Other than the fact that this case, like *Ingenuity*, concerns copyright infringement and out-of-court settlements, they are nothing alike. In *Ingenuity*, attorneys with "shattered law practices" obtained the copyrights to pornographic movies they did not produce, monitored BitTorrent activity, sued Internet service providers to determine the identities of the subscribers of IP addresses, and then sent cease-and-desist letters to subscribers demanding settlements of about $4,000. *Id.* at *2. "This nationwide strategy was highly successful because of statutory[ ]copyright damages, the pornographic subject matter, and the high cost of litigation," resulting in millions of dollars in proceeds due to the numerosity of the defendants. *Id*. The plaintiffs misrepresented their operations, relationships, and financial interests, and attempted to deceive the court. *Id.* at *3. Ultimately, the court awarded sanctions to the defendants and referred the matter to both the U.S. Attorney and the Internal Revenue Service for investigation. *Id.* at *4-*6.

In contrast, Reed is a practicing entity. Reed Decl., Ex. A, ECF #26-1. He is not using the threat of associating Ezelle's name with salacious activities to extract a settlement. He has not attempted to deceive this court or obfuscate the facts. Instead, Reed found the Image on

defendants' business website, where it had been posted for nine months. After contacting Ezelle with an initial settlement offer, Ezelle's counsel began making disparaging comments online and in settlement negotiations. When it became clear the parties could not reach an agreement, Reed filed suit. Reed has not engaged in the objectionable conduct described in *Ingenuity*. Defendant's reliance on that case could hardly be more misguided.

### 3. Severability

Lastly, Ezelle argues the court should sever the confidentiality clause and enforce the Proposed Settlement Agreement as is. The agreement provides for severability:

> The Parties acknowledge that if any provision or application of this Agreement is held invalid or unenforceable then any such provision will be deemed severed from this Agreement and the remaining provisions and applications of this Agreement will not be affected, but will remain valid and enforceable.

Proposed Settlement Agreement ¶ 11, ECF #24-3. However, this clause does not apply *before* an agreement has been made. Regardless, this court cannot sever the confidentiality clause on the basis that it is invalid or unenforceable. As discussed above, courts regularly enforce confidentiality clauses. *Doi*, 276 F.3d at 1139.

In sum, this court concludes that the parties did not enter into a binding settlement agreement as a matter of law.

## II. Copyright Infringement and Statutory Damages

The court next turns to the merits of Reed's copyright infringement claim.

### A. Relevant Law

Anyone who violates the exclusive rights of a copyright owner is an infringer of a copyright. 17 USC § 501(a). To prevail on a claim of copyright infringement, the plaintiff must establish ownership of a valid copyright and copying of constituent elements of the work that are original. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007). Copyright

infringement is a strict liability offense—the defendant's intent is not a required element of the claim. *See Precision Automation, Inc. v. Tech. Servs., Inc.*, 628 F. Supp. 2d 1244, 1250 (D. Or. 2008) ("No finding related to intent, including willfulness, is needed to establish this violation."); *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006) ("Liability for copyright infringement does not turn on the infringer's mental state.").

The copyright owner may elect to recover statutory damages instead of actual damages and profits "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 USC § 504(c)(2). However, in cases of willful infringement, the court may increase the award of statutory damages to $150,000. *Id*. In cases of innocent infringement, the court may reduce the award of statutory damages to a sum of not less than $200. *Id.* "Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently." *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).

Here, defendants concede they "unknowingly infringed" upon Reed's copyright in the Image. Defs.' Resp. 4, ECF #28; Joint Stip. Undisp. Facts ¶¶ 9-10, ECF #22. Reed accuses defendants of willful infringement and seeks the maximum amount of statutory damages in his Complaint. *See* Compl. ¶¶ 23, 30, Prayer for Relief, ECF #1. However, in his motion for summary judgment, Reed seeks $15,375, an amount within the range of damages applicable to non-willful infringement. *See* Pl.'s Mot. Summ. J. 1, 13, ECF #26; Pl.'s Reply 8, ECF #35. Because it is unclear whether Reed concedes defendants' infringement was not willful, the court addresses this issue on the merits.

### A. Willful Infringement

To prove a defendant's willfulness, the Copyright Act requires the plaintiff to show (1) the defendant was actually aware of the infringing activity, or (2) the defendant's actions were the result of "reckless disregard" for, or "willful blindness" to, the copyright holder's rights. *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011). Willful infringement can be either intentional or reckless. *Id.*

If an infringer knew his behavior was illegal, his infringement was intentional. *See Clear Skies Nevada, LLC v. Kainu*, No. 3:16-CV-811-AC, 2017 WL 4021121, at *8 (D. Or. Aug. 21, 2017). For example, in *Clear Skies*, the defendant not only admitted to downloading a copy of a movie through a BitTorrent client, but also admitted he was aware that what he was doing was illegal when he was doing it. *Id.* The court held that the defendants' actions were the result of reckless, if not intentional, disregard for the plaintiff's rights. *Id.*

If an infringer makes no attempt to inquire into whether the item was subject to copyright protection, the infringer is reckless or willfully blind. *Louis Vuitton Malletier*, 658 F.3d at 944. For example, in *Unicolors, Inc. v. Urban Outfitters, Inc.*, the court upheld a jury verdict finding a defendant liable for willful infringement because the defendant made no attempt to determine whether the material was copyrighted, reasoning that "regardless of how difficult it may be to determine whether particular designs have been registered, a party may act recklessly by refusing . . . to even investigate or attempt to determine [whether it is copyright protected.]" 853 F.3d 980, 991-92 (9th Cir. 2017).

Here, Reed cannot show defendants' infringement is either intentional or reckless. Unlike in *Clear Skies*, where the defendant admitted he knew the movie was copyright-protected, the uncontroverted evidence in this case is that Ezelle downloaded the Image from a "free

website" and believed the Image was "free." 2017 WL 4021121, at *8; Suppl. Ezelle Decl. ¶ 7, ECF #34. Unlike in *Unicolors*, where the defendants made no attempt to find copyright information, Ezelle "believed he took steps to make sure he was using a free image" by searching only for "free" images. 853 F.3d at 991-92; Ezelle Decl. ¶ 2, ECF #24-2. Ezelle further declares that he did not see a watermark or any other copyright information before downloading the Image. Suppl. Ezelle Decl. ¶ 7, ECF #34. Thus, defendants' infringement was not willful as a matter of law.

### B. Innocent Infringement

To be an "innocent infringer," a defendant must show he was "not aware and had no reason to believe that his . . . acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(2). An infringer is not innocent if he accessed works that had copyright notices, because the infringer could have learned about the copyrights had he inquired. *BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005). In *BMG*, for example, the defendant downloaded copyrighted music online rather than obtaining it from phonorecord discs. The plaintiff provided copyright notices on the surface of their phonorecords. Although the music posted online lacked copyright notices, the court reasoned that the inquiry is "whether 'access' to legitimate works was available rather than whether infringers earlier in the chain attached copyright notices to the pirated works." *Id.*

Similarly, here, defendants cannot prove that they were innocent because, while a copyright notice did not appear alongside the Image when Ezelle downloaded it, information that a copyright existed was readily discoverable. Brown Decl. ¶ 3, ECF#28; Suppl. Higbee Decl. ¶ 8, ECF #31-1. As in *BMG*, defendants could have learned about the copyright through basic

online research. Thus, defendants cannot prove that they had no reason to believe their acts constituted an infringement. As such, they are not innocent infringers.

## III.     Statutory Damages on Summary Judgment

When a plaintiff demands more than the minimum amount of statutory damages in a copyright infringement action and a party demands a jury trial, the Seventh Amendment entitles that party to have a jury decide the amount of statutory damages.[4] Here, the parties confirmed at oral argument that they both waived their right to a jury trial. As such, this court may award statutory damages on summary judgment. *See* FRCP 38(d).

Because this case involves neither willful nor innocent infringement, the court may award statutory damages of "not less than $750 or more than $30,000. " 17 USC § 504(c)(1). The court has "wide discretion" in determining the amount of statutory damages to be awarded, "constrained only by the specified maxima and minima." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)). "In measuring the damages, the court is to be guided by 'what is just in a particular case, considering the nature of the copyright, the circumstances of the infringement, and the like . . . .'" *Peer Int'l*, 909 F.2d at 1336 (quoting *F. W. Woolworth Co. v.*

---

[4] *See* 17 USC § 504; *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353-55 (1998) ("if a party so demands, a jury must determine the actual amount of statutory damages under § 504(c)"); *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) (discussing *Feltner* and holding "there is no right to a jury trial when a judge awards the minimum statutory damages"); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) ("We have subsequently interpreted *Feltner* to uphold the constitutionality of the statutory damages provision, provided that at the plaintiff's election of a jury trial, we replace the term 'court' in §504(c) with 'jury.'"); *Columbia Pictures Television*, 259 F.3d at 1193 (affirming district court's denial of plaintiff's motion to preclude a jury trial on statutory damages); *BMG*, 430 F.3d at 892 (holding that court may award minimum statutory damages on summary judgment where there is no genuine issue of material fact).

*Contemporary Arts*, 344 U.S. 228, 232 (1952)). "The Supreme Court has stated that 'even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within the statutory limits to sanction and vindicate the statutory policy' of discouraging infringement." *Id.* (citing *F. W. Woolworth*, 344 U.S. at 233) (alterations omitted). The Copyright Act does not require any evidence of actual damages or lost profits when awarding statutory damages. *Columbia Pictures Television*, 259 F.3d at 1194. Even so, some courts have held that statutory damages should bear some relation to the harm suffered. *See Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 345 (S.D.N.Y. 2017); *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145 (E.D.N.Y. 2013).

Here, Ezelle is a licensed real estate broker who has dealt in real property for over two decades. Arguably, with his level of professional experience, Ezelle should have known that he could not use the Image in this case. While it is unclear from which website Ezelle downloaded the Image, in this court's view, simply searching Google for "free images" and not immediately seeing a watermark lacks the type of diligence that would mitigate an award of statutory damages. Moreover, the infringement was not merely for personal use; Ezelle used the copyrighted work for profit and to further his own business interests.

On the other hand, Reed has not presented any evidence of actual damages or lost profits. Reed has not specified what if any remaining value the image has, whether it has ever been sold and at what price, and the importance of this specific image related to his whole practice as a fine-art nature photographer. Defs.' Resp. 3-5, ECF #28. Moreover, only a few thousand people may have even visited the EIP website in the nine months during which the Image was displayed, and the Image was displayed in rotation with seven other photographs at five-second intervals. *Id.* at 2.

Furthermore, Ezelle and Reed are not competitors. Reed sells high-quality fine-art prints, while Ezelle sells real estate. Ezelle infringed the copyright in the Image by visually enhancing his website—not by reselling the Image itself. However, such use could still devalue Reed's brand and destroy his ability to offer that piece for sale as part of his fine-art collection. Reed's customers could be less likely to view his work as "fine art" or to pay a premium for its artificial scarcity if they saw the same photo being used in that context. Pl.'s Mot. Summ. J. 13, ECF #26; Reed Decl. ¶¶ 17-18, ECF #26-1.

Finally, and importantly, Ezelle terminated his infringing use immediately after receiving Reed's cease-and-desist letter. Ezelle Decl., Ex. D at 31, ECF #24-6. Ezelle's immediate compliance is a factor in favor of a lower award.

Considering all the circumstances, a statutory award of $1,500, i.e., twice the minimum, is just in this case. The minimum award of $750 seems insufficient, given the length of time the image was used on Ezelle's commercial site and Ezelle's level of experience as a professional. An award that is twice the minimum would put "infringers on notice that it costs less to obey the copyright laws than to violate them," while anything higher would fail to discount for Ezelle's immediate compliance when he learned of the infringement. *BMI v. R Bar of Manhattan*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996).

## IV. Attorney's Fees and Costs

The court may award full costs and "a reasonable attorney's fee to the prevailing party as part of the costs." 17 USC § 505; *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1984-89 (2016). Reed has prevailed in this matter and is therefore entitled to costs and reasonable attorney's fees.

**ORDER**

Defendants' motion (ECF #24) is DENIED, and plaintiff's motion (ECF #26) is GRANTED. Defendants shall pay plaintiff $1,500 in statutory damages for infringing the copyright in the Image. Judgment shall be entered on behalf of plaintiff. Plaintiff shall submit proof of costs and reasonable attorney's fees within 14 days of this order. FRCP 54(d)(2).

IT IS SO ORDERED.

DATED November 5, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge