UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

AARON C. REED, an individual,

    Plaintiff,

  v.

EZELLE INVESTMENT PROPERTIES INC., doing business as ezelleinvestmentproperties.com, GLENN D. EZELLE JR., an individual, DOES 1-10 INCLUSIVE,

    Defendants.

Case No. 3:17-cv-01364-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Aaron C. Reed ("Reed") prevailed in this action for copyright infringement against defendants Glenn D. Ezelle Jr. ("Ezelle") and Ezelle Investment Properties Inc. (collectively "defendants"). Opinion and Order, ECF #39. This court awarded statutory damages of $1,500. Judgment, ECF #40. Reed now moves for costs and attorney's fees of $11,255 under 17 USC § 505. The court finds the motion appropriate for decision without oral argument. *See* FRCP 78(b); LR 7-1(d)(1). For the reasons set forth below, the motion (ECF #41) is granted, and costs and attorney's fees are awarded in the amount of $10,539.20.[1]

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). Notice of Consent, ECF #21.

# DISCUSSION

## I. Discretion to Award Fees

The court, "in its discretion," may allow the recovery of full costs and award reasonable attorney's fees as part of those costs to the prevailing party in an action for copyright infringement. 17 USC § 505; *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1985 (2016) ("§ 505 grants courts wide latitude to award attorney's fees based on the totality of circumstances in a case"). "[F]ee awards under § 505 should encourage the types of lawsuits that promote . . . encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirstaeng*, 136 S.Ct. at 1985. "When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the way to the end." *Id.* Thus, "[t]he holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small. . . ." *Id.*

Supreme Court and Ninth Circuit precedent guide this exercise of discretion. *Id.* at 1984-85; *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (explaining that the court's "discretion must remain tethered to judicial guideposts"). To determine whether to award fees, courts consider "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Glacier Films*, 896 F.3d at 1037 (citing *Fogerty v. Fantasy*, Inc., 510 U.S. 517, 534 n.19 (1994)). Substantial weight should be accorded to the reasonableness of the losing party's legal and factual arguments. *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018). Courts also should consider the "degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling

effect of attorney's fees may be too great or impose an inequitable burden on an impecunious litigant.'" *Id.* (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017) (alteration omitted).

### A. Degree of Success Obtained

Plaintiff obtained total success on the merits. *See Glacier Films*, 896 F.3d at 1038 (quoting *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996)). While the court awarded $1,500 in statutory damages, only about ten percent of the amount plaintiff sought (*see* Opinion and Order 6, 19, ECF #39), any award of statutory damages is a complete victory as "[a]ctual success in an infringement action involves establishing the defendant's liability." *Glacier Films*, 896 F.3d at 1038 (citing *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006)). Defendants stipulated to facts conclusively establishing their liability for direct copyright infringement and offered no substantive affirmative defenses to the infringement (e.g., fair use, exhaustion, *de minimis* use). Resp. 4-5, ECF #31. Unless the court found that the parties had entered into a binding settlement agreement, plaintiff was entitled to prevail.

Defendants argue not only that plaintiff's motion for fees should be denied, but that they should be awarded fees because the amount of statutory damages awarded more closely aligns with their value of the case. Defs' Resp. to Mot. for Attorney's Fees 5, ECF #42 ("Defs' Resp."). Indeed, defendants made a Rule-68 offer of $1,100, only $400 less than the judgment awarded, while plaintiff demanded up to $20,000 before litigation ensued and $40,000 after that to settle the case. Decl. of David Brown ¶ 6, ECF #43. However, despite plaintiff's purported overvaluation, success depends on liability, not the amount of statutory damages recovered. *Glacier Films*, 896 F.3d at 1038.

3 – OPINION AND ORDER

### B. Need to Advance Compensation and Deterrence

Defendants' assertion that "Ezelle has had a painful education" is well taken. Defs' Resp. 6, ECF #42. The $1,500 award of statutory damages is enough to deter defendants from additional infringement.

However, this amount is insufficient to compensate Reed for his legitimate efforts in enforcing his valid copyrights. Reed has incurred attorney's fees and costs to recover statutory damages. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) ("[A]n award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party."); *Oracle USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1170 (D. Nev. 2018) ("Without a fee award, the court finds that [plaintiff's] investment in its intellectual property and its incentive to create future [works] would not be appropriately protected or compensated."). Thus, while an award of attorney's fees is not needed to deter Ezelle from further copyright infringement, it is necessary to compensate Reed for pursuing a meritorious claim.

### C. Objective Unreasonableness and Frivolousness

This lawsuit is not frivolous. Ezelle conceded liability to copyright infringement at the outset. His only arguments to the contrary were premised on the notion that the parties had entered into a binding settlement agreement for $1,000. As discussed in this court's opinion and order, that was not the case. *See* Opinion and Order 6-13, ECF #39.

Ezelle proposed a settlement amount of $1,000, and Reed sent him a copy of the Proposed Settlement Agreement to be signed and returned with payment. Ezelle Decl., Ex. D at 7, ECF #24-6. Ezelle crossed out material provisions of the Proposed Settlement Agreement and

then sent it and a check for $1,000 back to Reed. This was clearly a counter offer. Moreover, the counter offer was accompanied by an email where Ezelle's counsel wrote, "We are not making a settlement offer. . . . If the deletions are unacceptable, you can return the check to me." Decl. of Glenn Ezelle, Ex. D at 3, 6-8, ECF #24-6.

## D. Motivation

Reed's motivation in pursing this suit was at least in part to protect his professional reputation. Ezelle's counsel made several disparaging comments about Reed on online forums before settlement negotiations fell apart. Ezelle Decl. ¶¶ 9-10 and Exs. B, E. He made additional comments after the parties failed to agree on whether the settlement would be confidential. "Reed felt that he would not be able to fully combat any negative statements made by Defendants' counsel . . . without procuring a favorable judgment on the merits. . . ." Decl. of Mathew Higbee ¶ 14, ECF #26-1; Decl. of Aaron Reed ¶¶ 24-25, ECF #26-1.

## E. Goals of the Copyright Act

"The most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (citing *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996)). The primary objective of the Copyright Act "is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. Awarding fees to encourage meritorious lawsuits promotes these objectives "by assuring authors the right to their original expression and encouraging others to build freely upon the ideas and information conveyed by a work." *Glacier Films*, 896 F.3d at 1041 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 349-50 (1991) (alterations omitted). "Inherent in the Act's purpose is that 'a copyright holder has always had the legal authority to bring a traditional

infringement suit against one who wrongfully copies.'" *Glacier Films*, 896 F.3d at 1041 (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 963 (2005)).

Defendants infringed plaintiff's copyrighted work and used it to further their business interests. That Ezelle apparently procured the image from a fraudulent website and thought he could use the image for free does not negate the infringement, which is a strict-liability tort. *Precision Automation, Inc. v. Tech. Servs., Inc.*, 628 F. Supp. 2d 1244, 1250 (D. Or. 2008). Plaintiff has a valid copyright in the image and should be encouraged to litigate meritorious claims of its infringement. To conclude otherwise would diminish plaintiff's right to his original expression in the copyrighted work. This is not a case where plaintiff is a non-practicing entity that buys up copyrights with the sole purpose of extracting settlement from an unsophisticated and unrepresented defendant. Plaintiff is a practicing entity, a fine-art nature photographer, who appears to have invested heavily in the intellectual property at the core of his business. And defendants are neither unsophisticated nor unrepresented.

Defendants nonetheless argue that attorney's fees should not be awarded to "deter . . . [the] overaggressive assertion of copyright claims." Defs' Resp. 2, ECF #42 (citing *Kirstaeng*, 136 S.Ct. at 1989). An "overaggressive assertion of copyright claims" may entail the "pressing of a futile claim; . . . filing a single complaint over 900 pages long with hundreds of separate claims and defendants; engaging in discovery abuses; abusing the summary judgment process by submitting massive statements of disputed facts which included legal conclusions and immaterial and argumentative assertions; and engaging in sharp pre-trial practices." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008); *see also, e.g.*, *Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, No. 3:16-CV-1443-SI, 2018 WL 3023089, at *5 (D. Or. June 18, 2018) (finding an overaggressive assertion of copyright claims when filing and pursuing of

lawsuits in which no reasonable factual chain of title existed); *Cobbler Nevada, LLC v. Gonzales*, No. 3:15-CV-00866-SB, 2016 WL 8677323, at *6 (D. Or. Dec. 2, 2016), *findings and recommendations adopted*, 2017 WL 44948 (D. Or. Jan. 4, 2017), *aff'd,* 901 F.3d 1142 (9th Cir. 2018) (finding an overaggressive assertion of copyright claims in part because plaintiff pursued alleged infringers without a reasonable factual basis to establish infringers' individual identities).

Here, defendants contend that plaintiff employed several questionable litigation tactics before and after bringing this action, including (1) initially demanding $5,000 to settle the claim or threatening the "maximum relief possible, which may include statutory damages under 17 USC § 504 for up to $150,000 for intentional infringement or $30,000 for unintentional infringement," ECF #24-3, (2) insisting on confidentiality throughout settlement negotiations, (3) continually overvaluing this case including by demanding $20,000 to settle after negotiations fell through and $40,000 after litigation commenced, and then (4) again offering to settle while the motion for attorney's fees was pending for a total of $4,500 more than the judgment and amount of attorney's fees requested combined—citing the future embarrassment of Ezelle. Brown Decl., Ex. A at 8, 10, ECF #43; Defs' Resp. 3, ECF #42.

First, the initial demand was an aggressive tactic, but it was not "overaggressive." The Ninth Circuit has made clear that "individual cases . . . deserve to be judged on their own merits and not saddled with a blanket indictment against [other] copyright litigation." *Glacier Films*, 896 F.3d at 1038. Ezelle had no viable affirmative defenses to the infringement. Nor was his identity in question, something at issue in the many unlawful BitTorrent cases upon which defendants rely. Defs' Resp. 5, ECF #42. Although the initial demand letter was somewhat misleading in that it omitted § 504's minimum statutory award of $250 for innocent infringement, its representations about the law were not otherwise inaccurate.

Second, Reed's insistence on the confidentiality clause was not overaggressive under the circumstances. Reed "was worried that Defendants and their attorney would speak negatively of [him] by falsely stating that [he] had 'seeded' [his] Image on to the Internet, and characterizing [him] as a 'copyright troll,' implying that [his] claims lacked merit, and that [his] efforts to legitimately protect [his] copyrights were frivolous or underhanded." Reed Decl. ¶ 24, ECF #26-1.

Third, defendants' settlement demands were not "overaggressive." Reed demanded $20,000 to settle before filing his complaint, and the court awarded far less in statutory damages. But, as discussed below, Reed is entitled to slightly over $10,000 in attorney fees. When combined with the $1,500 in statutory damages that are being awarded, plaintiff's initial settlement demand cannot be characterized as "overaggressive." Defendants also complain that Reed offered to settle this case for a premium "to spare [Ezelle] the embarrassment of having a . . . judgment entered against him" after this court awarded statutory damages. Brown Decl., Ex. A at 10, ECF #43. While fatuous,[2] this tactic also was not "overaggressive."

Ezelle's bare assertion that acquiescing to Reed's insistence on confidentiality would have required him to "waive his First Amendment rights" falls flat. *See* Defs' Resp. 8, ECF #42. Reed is a private party, not a government actor. "A threshold requirement of any constitutional claim is the presence of state action." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 837 (9th Cir. 2017), *cert. denied,* 138 S.Ct. 2653 (2018) (quoting *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200 (9th Cir. 1998), *overruled on other grounds by E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003). "[An] action between private parties does not

---

[2] It is unlikely that a party who risked litigation specifically to avoid confidentiality would be embarrassed by the public nature of a judgment and subsequent attorney-fee award.

8 – OPINION AND ORDER

involve state action simply because the court in which the case is pursued is an organ of the state or federal government." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013).

All this is beside the point, however, because "nowhere in *Kirtsaeng* did the Supreme Court promote denying fees in *meritorious claims* because those winning claims are somehow 'overaggressive.' Indeed, it is difficult to see how pursuing a meritorious infringement claim 'less aggressively' furthers 'the Copyright Act's essential goals.'" *Glacier Films*, 896 F.3d at 1042 (emphasis in original). *Kirtsaeng* held that a district court "*may order fee-shifting* . . . to deter . . . overaggressive assertions of copyright claims, again even if the *losing position* was reasonable in a particular case." *Glacier Films*, 896 F.3d at 1041 (citing *Kirtsaeng*, 136 S.Ct. at 1988-89) (alterations and emphasis added in *Glacier Films*).

In sum, all factors weigh toward awarding costs and reasonable attorney's fees.

## II. Calculation of Reasonable Attorney's Fees

The court calculates attorney's fees using the lodestar method, that is, by multiplying the number of hours worked by the reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). In determining the "reasonable hourly rate to use for attorneys and paralegals[,]" the court looks to the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted). The court also excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"[T]here is a strong presumption that the lodestar is sufficient." *Perdue*, 559 U.S. at 556. "[A] multiplier may be used to adjust the lodestar amount upward or downward only in rare and

9 – OPINION AND ORDER

exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quotations and citations omitted). "Adjustments [to the lodestar amount] must be carefully tailored . . . and [made] only to the extent a factor has not been subsumed within the lodestar calculation." *Rouse v. Law Offices of Rory Clark*, 603 F.3d 699, 704 (9th Cir. 2009) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008)). The party seeking fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted).

Courts look to the "prevailing market rates in the relevant community" to determine reasonable hourly rates. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community "is one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir.), *cert den.*, 502 U.S. 899 (1991). This court uses the most recent Oregon State Bar Economic Survey as a benchmark for comparing an attorney's billable rate with the fee customarily charged in the locality. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013).

Plaintiff's counsel affirms that his law firm charges a partner rate of $300 per hour, an associate rate of $250 per hour, and a "paralegal/law clerk" rate of $175 per hour. Decl. of Mathew Higbee ¶ 5, ECF #41-1. But besides providing the staff member's initials and hourly rate, the billing records do not otherwise identify the staff member who performed the work, or any staff member's experience or level of expertise. Higbee was admitted to the California bar in 2006. Thus, he has a least 13 years of experience. Higbee's rate of $300 per hour is the same

as the median rate for Portland attorneys with 13 to 15 years of experience and just $12 more than the mean rate for the same. *See* OREGON STATE BAR, 2017 ECONOMIC SURVEY 38 tbl.36 (2017). As such, Higbee's rate is reasonable.

Having nothing to go on for the associates' experience or expertise, the court defaults to the median rate of first-year associates in the Portland area, which is $235 per hour. *Id.* The court is confident that an associate performed the work billed at $250 per hour, but cannot fairly award more without additional evidence of experience or expertise.

Similarly, plaintiff's "paralegal/law clerk" lacks identifying attributes. Thus, the court defaults to the median rate of a first-year paralegal. According to the most recent National Utilization and Compensation Survey Report, the mean hourly billable rate for a paralegal in the Far West region, which includes the State of Oregon, is $153 per hour. NATIONAL ASSOCIATION LEGAL ASSISTANTS, NATIONAL UTILIZATION AND COMPENSATION SURVEY REPORT 22 fig.28 (2018) ("NALA REPORT"); *see also Pac. Coast Fruit Co. v. Ron Squires dba Four Seasons Farmers Mkt.*, No. 3:16-CV-00463-BR, 2016 WL 4443166, at *3 (D. Or. Aug. 19, 2016) (relying on a prior version of this report to determine the reasonable hourly billable rate for a paralegal). However, the mean hourly billable rate for paralegals with one to five years of experience is $129 per hour. NALA REPORT 23 fig.30. Because the NALA Report does not provide billable rates within regions by years of experience, the court finds that $129 is the reasonable rate here.

The records sufficiently document hours expended and establish entitlement to a fee award. *Hensley*, 461 U.S. at 437. The number of hours worked is reasonable, and Ezelle does argue otherwise. Therefore, plaintiff is entitled to attorney's fees for 11.8 hours of work at a partner rate of $300 per hour, 23.8 hours of work at an associate rate of $235 per hour, and 7.8

hours of work at a paralegal rate of $129 per hour. Thus, the lodestar is $10,139.20.[3] Neither party argues that this is a rare or exceptional case where the lodestar should be modified. *See Van Gerwen*, 214 F.3d at 1045. As such, the court finds that the lodestar is sufficient.

Reed is also entitled to reasonable costs of $400, the filing fee incurred to commence this action. Reed is thus entitled to a total of $10,539.20 in costs and reasonable attorney's fees under 17 USC § 505.

### ORDER

Plaintiff's motion for costs and attorneys' fees (ECF #41) is granted in the amount of $10,539.20.

IT IS SO ORDERED.

DATED April 2, 2019.

/s/ Youlee Yim You  
Youlee Yim You  
United States Magistrate Judge

---

[3] Specifically, the calculation is as follows: (11.8*300)+(23.8*235)+(7.8*129) = 10,139.20.